## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

25 CV 968-S

|  |  |  |
|---|---|---|
| ORZIKULOV, BOBIRJON VAHOB UGLI | ) | Case No.: 25-cv- |
|  | ) |  |
|  | ) | **EMERGENCY** |
|  | ) | **VERIFIED PETITION** |
| *Petitioner*, | ) | **FOR WRIT OF** |
|  | ) | **HABEAS CORPUS** |
|  | ) | **AND COMPLAINT** |
|  | ) | **FOR INJUNCTIVE** |
| v. | ) | **AND** |
|  | ) | **DECLARATORY** |
|  | ) | **RELIEF** |
|  | ) |  |
| STEPHEN KURZDORFER, in his official capacity as | ) | **ORAL ARGUMENT** |
| Acting Field Office Director, Buffalo Field Office, | ) | **REQUESTED** |
| Enforcement and Removal Operations, | ) |  |
| U.S. Immigration & Customs Enforcement; | ) |  |
| JOSEPH FREDEN, in his official capacity as Deputy Field | ) |  |
| Office Director of the Buffalo Federal Detention Facility; | ) |  |
| TODD LYONS, in his official capacity as Acting | ) |  |
| Director U.S. Immigrations and Customs Enforcement; | ) |  |
| and KRISTI NOEM, in her official capacity as secretary | ) |  |
| of the U.S. Secretary of Homeland Security | ) |  |
|  | ) |  |
| *Respondents*. | ) |  |
|  | ) |  |

UNITED STATES DISTRICT COURT
FILED
OCT 2 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

## **INTRODUCTION**

1.      Petitioner Bobirjon Vahob Ugli (Petitioner or Bobirjon) is a noncitizen who has resided in the United States for over two years. He has never been convicted of any crime and has no pending criminal chargers. When he first encountered immigration authorities in 2023, he was processed and immediately released pursuant to an "Order of Recognizance" (OR) pursuant to 8 C.F.R. § 1226(a)(2)(B).

2.       Petitioner was subsequently placed in removal proceedings and charged with, *inter alia*, having entered the United States without inspection. *See* 8 U.S.C. §1182(a)(6)(A)(i).

3.       Petitioner is currently the beneficiary of an approved Special Immigrant Juvenile Status (SIJS), a congressionally authorized program that creates a pathway to Lawful Permanent Resident ("LPR") status for young people who are victims of abuse, abandonment, or neglect.

4.       Given Petitioner's SIJS, An Immigration Judge (IJ) terminated his removal proceedings so that Petitioner may seek adjustment of status through his SIJS once a visa for his case becomes available.

5.       Despite these circumstances, On June 21, 2025, Respondents once again arrested Petitioner in Buffalo and was placed in removal proceedings  again and charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i). Based on this allegation in Petitioner's removal proceedings, DHS denied his release from immigration custody pursuant to 8 U.S.C. § 1226 and 8 C.F.R. 236. Those denials were consistent with a new DHS policy issued on July 8, 2025, instructing all ICE employees to consider anyone alleged to be inadmissible under § 1182(a)(6)(A)(i) —i.e., those who entered the United States without inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore eligible for release only on parole.

6.       Although Petitioner is not a danger or a fight risk, he has now been in immigration detention for roughly three months at the Buffalo Federal Detention Facility. He has not received a bond hearing or any other individualized process to determine if he should be detained. He did ask for a bond hearing, but the Immigration Judge (IJ) ruled that "The Court lacks jurisdiction over Respondent's custody redetermination pursuant to Matter of Q. Li., 299 I&N Dec. 66 (BIA 2025)."

7.       In *Matter of Q. Li.*, the BIA held that that "An applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a

port of entry, and subsequently place in removal proceedings is detained under . . . 8 U.S.C.
§1225(b) . . . and is ineligible for any subsequent release on bond under . . . 8 U.S.C. § 1226(a).
299 I&N Dec. 66 (BIA 2025).

8.     Petitioner was harmed by Respondents new, draconian policy reinterpreting the
immigration detention statutes to preclude Petitioner from eligibility for bond under the
Immigration and Nationality Act (INA) 8 U.S.C. § 1226(a), and for bond hearings under 8 C.F.R.
§§ 1003.19(a), 1236.1(d). Instead, pursuant to this new policy, Defendants now consider Plaintiffs
as subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), without the opportunity for
release on bond during the pendency of their lengthy removal proceedings.

9.     Plaintiffs' detention on this basis violates the plaint language of the INA and its
implementing regulations.

10.     Subparagraph 1225(b)(2)(A) applies to individuals who are apprehended on arrival
in the United States. It states that an "applicant for admission" who is "seeking admission" shall
be detained for a removal proceeding. Id. It does not apply to individuals like Plaintiffs, who are
arrested and detained by ICE after having entered and begun residing in the United States. Instead,
such individuals are subject to a different statute, 8 U.S.C. § 1226(a), that allows for release on
conditional parole or bond. That statute expressly applies to people who, like Plaintiffs, are charged
as inadmissible for having entered the United States without inspections.

11.     Defendants' new legal interpretation is plainly contrary to the statutory framework
and its implementing regulations. Indeed, for decades, Defendants have applied § 1226(a) to
people like Plaintiffs. Defendants' new policies are thus not only contrary to law, but arbitrary and
capricious in violation of the Administrative Procedure Act (APA). They were also adopted without
complying with the APA's procedural requirements.

12.    Petitioners' arrest and ongoing detention are causing him immense harm. Prior to his June 21, 2025 detention, Bobirjon had never been criminally arrested and as stated before, was detained for a brief period after entering the U.S. states before being released. Since arriving at the Buffalo Federal Immigration Detention Center ("BFDF"), he has not been able to sleep. He has been separated from his family and support network and fears that he will be sent back to Uzbekistan—where he was abandoned by his parents and from where he seeks asylum.

13.    Bobirjon respectfully asks this Court to hold that his arrest was unlawful, to hold that his continued detention is unlawful, and to order his release from custody. Bobirjon also respectfully asks that this Court order Respondent not transfer him outside of the District for the duration of this proceedings.

14.    Every day Oliver spends in detention subjects him to further irreparable harm. Immediate relief is necessary to ensure that Bobirjon is no longer subjected to continued violations of his substantive and procedural rights.

## **PARTIES**

15.    Petitioner Bobirjon Orzikulov is an Uzbekistan national with Special Immigrant Juvenile Status also seeking asylum in the United States.

16.    Respondent Stephen Kurzdorfer is sued in his official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement. Respondent Kurzdorfer is a legal custodian of Oliver.

17.    Respondent Joseph Freden is sued in his official capacity as Deputy Field Office Director of the Buffalo Federal Detention Facility. Respondent Freden is a legal custodian of Oliver.

18.     Respondent Todd Lyons is sued in his official capacity as Acting Director U.S. Immigrations and Customs Enforcement. As the Acting Director of ICE, Respondent Lyons is a legal custodian of Oliver

19.     Respondent Kristi Noem is sued in her official capacity as Secretary of Homeland Security. As the head of the Department of Homeland Security, the agency tasked with enforcing immigration laws, Secretary Noem is Oliver's ultimate legal custodian.

## BACKGROUND

20.     The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

21.     First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention until their removal proceedings are concluded, see 8 U.S.C. § 1226(c).

22.     Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals "seeking admission" referred to under § 1225(b)(2).

23.     Last, the INA also provides for detention of noncitizens who have received a final order of removal from the United States, including individuals in withholding-only proceedings, see 8 U.S.C. § 1231(a)–(b).

24.     This case concerns the detention provisions at § 1226(a) and § 1225(b)(2). The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration

Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226 was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

25.    Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 but were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

26.    Thus, in the decades that followed, most people who entered without inspection and were thereafter arrested and placed in standard removal proceedings were considered for release on bond and received bond hearings before an IJ, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who had entered the United States, even if without inspection, were entitled to a custody hearing before an IJ or other hearing officer. In contrast, those who were stopped at the border were only entitled to release on parole. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

27.    In recent months, Defendants have adopted an entirely new interpretation of the statute. On May 15, 2025, The BIA in *Matter of Q. Li.*, 29 I&N Dec. 66 (BIA 2025) issued a published decision holding that an applicant for admission who is arrested and detained without a

warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is ineligible for IJ bond hearing under 8 U.S.C. § 1225(b)(2)(A).

28.     On July 8, 2025, ICE, "in coordination with the Department of Justice (DOJ)," announced a corresponding policy that rejected the well-established understanding of the statutory and regulatory framework and reversed decades of practice.

29.     The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be deemed subject to mandatory detention under § 1225(b)(2)(A). Id. The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

30.     It is estimated that this novel interpretation of the INA would require a person's detention any time that immigration authorities arrest one of the millions of immigrants residing in the United States who entered without inspection and who has not since been admitted or paroled.[1]

31.     According to news reports, immigration officials within the Trump administration requested this new policy in response to Congress's recent appropriation of billions of dollars to expand the immigration system, given that the ICE will soon have capacity to detain more than twice as many people on any given day.[2]

---

[1] Maria Sacchetti & Carol D. Leonnig, ICE declares millions of undocumented immigrants ineligible for bond hearings, Washington Post (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump undocumented-immigrants-bond-hearings/ [https://perma.cc/5ZTR-EN4B].

[2] See Michelle Hackman, New ICE Policy Blocks Detained Migrants From Seeking Bond, Wall Street Journal (July 15, 2025), https://www.wsj.com/politics/policy/new-ice-policy-blocks-detained-migrants from-seeking-bond-f557402a [https://perma.cc/K8NY-DAAZ].

32.    The IJs at the Batavia Immigration Court followed suit. These IJs are now holding that they lack jurisdiction to determine bond for any person who has entered the United States without inspection, even if that person has resided here for months, years or decades. Instead, consistent with the BIA decision and the new DHS policy, the IJs are concluding such people are subject to mandatory detention under § 1225(b)(2)(A).

33.    While other IJs in other immigration courts have continued to grant bond to people like Plaintiffs, consistent with its new policy, DHS also has begun filing Form EOIR-43, Notice of Service Intent to Appeal Custody Redetermination. This notice not only appeals to any IJ decision granting bond but also triggers an automatic stay of the bond decision during the appeal. See 8 C.F.R. § 1003.19(i)(2).

34.    The "auto-stay" provision of 8 C.F.R. § 1003.19(i)(2) prevents noncitizens from posting bond and being released even in jurisdictions where IJs have rejected DHS's unlawful reinterpretation of § 1225(b)(2) and have granted bond.

35.    ICE and DOJ have adopted this new and unprecedented position on bond even though federal courts have rejected this exact conclusion. For example, in the Tacoma, Washington, immigration court, IJs previously stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, reasoning such people are subject to mandatory detention under § 1225(b)(2)(A). There, in granting preliminary injunctive relief, the U.S. District Court for the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, No. 3:25-CV-05240-TMC, --- F. Supp. 3d ---, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *see also Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (ordering release and concluding

that noncitizen detained in the interior of the U.S. is not subject to mandatory detention pursuant to § 1225 under the plain meaning of §§ 1225 and 1226 and the case law interpreting those provision); *Samb v. Joyce*, 2025 WL 2398851 (S.D.N.Y. Aug. 19, 2025) (order noncitizen released and holding that he was not subject to mandatory detention as a noncitizen "seeking admission" to the country under 8 U.S.C. § 1225, but rather is subject to detention under § 1226); *Gomes v. Hyde*, No. 1:25-CV 11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (granting habeas petition based on same conclusion); *Diaz Martinez v. Hyde*, No. CV 25-11613 BEM, --- F. Supp. 3d ---- 2025 WL 2084238, at *9 (D. Mass. July 24, 2025) (ordering release where noncitizen was redetained based on ICE's assertion of detention authority under § 1225(b)).

36.    DHS's and DOJ's interpretation defies the INA. As the *Rodriguez Vazquez* court and other courts explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Plaintiffs.

37.    Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

38.    The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Just this year, Congress enacted subparagraph (E) in the Laken Riley Act to exclude certain noncitizens who entered without inspection from § 1226(a)'s default bond provision. Subparagraph (E)'s reference to persons inadmissible under § 1182(6)(A), i.e., persons inadmissible for entering without inspection, makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies.

*Rodriguez Vazquez*, 2025 WL 1193850, at *12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

39.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who very recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A); *see also Diaz Martinez*, 2025 WL 2084238, at *8 ("'[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.'" (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

40.     Through its text, 8 U.S.C. § 1225 refers to "inspections"—a term not defined in the INA but which typically connotes an examination upon or soon after physical entry. *See* § 1225 (titled "Inspection by immigration officers; expedited removal of inadmissible arriving [noncitizens]; referral for hearing"); §§ 1225(b)(1)–(2) (referring to "inspections" in their titles); § 1225(d)(1) (authorizing immigration officials to search certain conveyances in order to conduct "inspections" where noncitizens "are being brought into the United States"). Indeed, many statutory provisions, various regulations and agency precent discuss "inspection" in the context of admission process at port of entry, further supporting the conclusion that § 1225 has limited

temporal and geographic scope. *See*, e.g., §§ 1187(h)(2)(B)(i); § 1752a; 8 C.F.R. § 235.1; *Matter of Quilantan*, 25 I&N Dec. 285 (BIA 2010).

41.    Indeed, individuals arrested within the United States and placed into removal proceedings are generally detained pursuant to 8 U.S.C. § 1226. See Jennings, 583 U.S. at 288-89 (describing § 1226 detention as relating to people "inside the United States" and "present in the country"). They are generally subject to discretionary detention under § 1226(a). These detainees are entitled to a custody redetermination (colloquially called a "bond hearing") before an IJ to decide whether they should be detained or released. See 8 C.F.R. §§ 1003.19(a), 1236.1(d). A bond hearing with strong procedural protections is not mere regulatory grace; it is the baseline Due Process requirement for § 1226 detainees. See Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021); Doe v. Tompkins, 11 F.4th 1, 2 (1st Cir. 2021); Brito v. Garland, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment).

42.    Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## STATEMENT OF FACTS

43.    Petitioner Bobirjon Orzikulov is a native and citizen of Uzbekistan. He was abandoned and abused by his biological parents in Uzbekistan.

44.    In 2023, Bobirjon came to the United States to seek safety  and entered through the U.S. Mexico border at the age of 18.

45.    On or about June 20, 2023, Bobirjon was detained and processed by an immigration official. On the same day, the border official decided to permit him entry and released him from detention on conditional parole, pursuant to 8 U.S.C. §1226(a)(2)(B). Petitioner was served with

11

a Notice to Appear (NTA) requiring him to appear before the Executive Office of Immigration Review (Office of the Immigration Judge).

46.    He subsequently relocated to Brooklyn, NY to reside with his guardian, Parvina Mallaeva.

47.    In 2024, Bobirjon obtain an order from Kings County Family Court deeming him a Special Immigrant Juvenile and placed him under the guardianship of Ms. Mallaeva.

48.    In December 4, 2024, Bobirjon filed an I-360 Self-Petition, under Special Immigrant Juvenile Status classification (I-360), approved by USCIS on March 31, 2025, with deferred action.

49.    On June 17, 2025, an Immigration Judge terminated Bobirjon's immigration proceedings so that he may obtain adjustment of status based on his approved I-360.

50.    On June 21, 2025, Bobirjon was detained in Buffalo, NY on his way to meet a friend. On the same day, Bobirjon was served with a new NTA and was placed in removal proceedings in the Batavia Immigration Court. ICE has charged him with, *inter* alia, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who allegedly entered the United States without inspection.

51.    He was subsequently taken to the Buffalo Federal Detention Facility (BFDF) where he remains today as of the date of the filing of this Petition. Prior to June 21, 2025, Bobirjon had never been in detention (apart from his brief detention in 2023 after entering the United States) or carceral setting and, upon information and belief, has never been arrested in the United States and/or Uzbekistan.

52.    ICE denied Bobirjon release on bond, and he requested a bond redetermination hearing before an IJ.

53.     On July 17, 2025, an Adelanto IJ issued a decision that the immigration court lacked jurisdiction to conduct a bond redetermination hearing because Mr. Maldonado is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

54.     As a result of Bobirjon remains in detention. Without relief from this Court, he faces the prospect of months, or even years, in immigration custody, separated from his family and community.

55.     Any appeal to the BIA is futile. DHS's new policy was issued ""in coordination with" DOJ. EOIR—the immigration court system—is a component agency of DOJ. Further, as noted, in September 5, 2025, the BIA in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), held that persons like Bobirjon are subject to mandatory detention as applicants for admission.

56.     Bobirjon has lived in New York City for over two years and has no criminal record.

57.     Bobirjon qualifies for adjustment of status based on his approved I-360 through his SIJS classification. "Congress created Special Immigrant Juvenile Status to alleviate 'hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future." 58 Fed. Reg. 42,843, 42,844 (Aug. 12, 1993).

## JURISDICTION AND VENUE

58.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2241 (habeas corpus).

59.     Venue is proper in the Western District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this district. Venue is also proper under 28 U.S.C. § 2241(d) because Oliver is detained at a facility within this district.

60.     Administrative exhaustion is unnecessary because it would be futile.

## CAUSES OF ACTION

## COUNT I

### Violation of 8 U.S.C. § 1226(a) Unlawful Denial of Release on Bond (on Behalf of Plaintiffs and both classes)

61.     Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

62.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Defendants. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

63.     Nonetheless, DHS and the Adelanto Immigration Court have adopted a policy and practice of applying § 1225(b)(2) to Plaintiffs, Bond Eligible Class members, and Adelanto Class members.

64.     The unlawful application of § 1225(b)(2) to Bond Eligible Class members and Adelanto Class members unlawfully mandates their continued detention and violates the INA.

## COUNT II

### Violation of the Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1 and 1003.19
### Unlawful Denial of Release on Bond
### (On Behalf of Plaintiffs and both classes)

65.     Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–47 as if fully set forth herein.

66.     In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) *will be eligible for bond and bond redetermination.*" 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

67.     Nonetheless, DHS and the Batavia Immigration Court have adopted a policy and practice of applying § 12259b)(2) to Petitioner.

68.     The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

## COUNT III

### Violation of the Administrative Procedure Act Contrary to Law and Arbitrary and
### Capricious Agency Policy (On Behalf of Plaintiffs and both classes)

69.     Petitioner incorporates by reference the allegations of fact set forth in paragraphs 1-51 as if fully set forth herein.

70.     The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

71.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Defendants. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

72.     Nonetheless, DHS and the Batavia Immigration Court IJs have a policy and practice of applying § 1225(b)(2) to Petitioner.

73.     Moreover, Defendants have failed to articulate reasoned explanations for their decisions, which represent changes in the agencies' policies and positions; have considered factors that Congress did not intend to be considered; have entirely failed to consider important aspects of the problem; and have offered explanations for their decisions that run counter to the evidence before the agencies. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

74.     The application of § 1225(b)(2) to petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. See 5 U.S.C. § 706(2).

## COUNT IV

### Violation of the Administrative Procedure Act Failure to Observe Required Procedures
### (On Behalf of Plaintiffs and both classes)

75.     Petitioner incorporate by reference the allegations of fact set forth paragraphs 1–74 as if fully set forth herein.

76.    The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Specifically, the APA requires agencies to follow public notice-and-comment rulemaking procedures before promulgating new regulations or amending existing regulations. See 5 U.S.C. § 553(b), (c).

77.    Defendants failed to comply with the APA by adopting its policy and departing from its regulations without any rulemaking, let alone any notice or meaningful opportunity to comment. Defendants failed to publish any such new rule despite affecting the substantive rights of Petitioner and thousands of noncitizens under the INA, as required under 5 U.S.C. § 553(d).

78.    Had Defendants complied with the advance publication and notice and-comment rulemaking requirements under the APA, members of the public and organizations that advocate on behalf of noncitizens like Petitioner would have submitted comments opposing the new policies.

79.    The APA's notice and comment exceptions related to "foreign affairs function[s] of the United States," id. § 553(a)(1), and "good cause," id. § 553(d)(3), are inapplicable.

80.    Defendants' adoption of their no-bond policies therefore violates the public notice-and-comment rulemaking procedures required under the APA.

## COUNT V

### Violation of Fifth Amendment Due Process Clause
### (On behalf of Plaintiffs and Both Classes)

81.    Petitioner incorporate by reference the allegations of fact set forth paragraphs 1–63 as if fully set forth herein.

82.    The Fifth Amendment provides that "[n]o person" shall be "be deprived of life, liberty, or property, without due process of law."

83.     "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

84.     Moreover, "[t]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693.

85.     Defendants' mandatory detention of Plaintiffs and the proposed classes without consideration for release on bond or access to a bond hearing violates their due process rights.

## PRAYER FOR RELIEF

WHEREFORE, the petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Order Respondents to show cause why the writ should not be granted within three days and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

3) Enjoin the respondents from transferring the petitioner away from the jurisdiction of this District pending these proceedings;

4) Declare that the petitioner's arrest and detention violates the INA, its implementing regulations, the APA, and the Due Process Clause;

5) Issue a Writ of Habeas Corpus ordering Respondents to immediately release the petitioner from custody or provide them with a bond hearing pursuant to 8 U.S.C. § 1226(a) or the Due Process Clause within 7 days;

6) Set aside the denial of bond hearing that Defendants issued to Petitioner and order Defendants to provide a new bond hearing pursuant to 8 U.S.C. § 1226(a) within 7 days;

7) Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act (EAJA), as amended, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, and on any other basis justified under law; and

8) Grant any other and further relief that this Court deems just and appropriate, including individual injunctions when requested as necessary to secure the rights of class members.

Dated: September 30, 2025                          Respectfully submitted,

/s/ Ronald Paul Hart

Ronald Paul Hart, Esq.,
Ronald Paul Hart P.C.
225 Broadway Ste 2815
New York, NY 10007-3079
Tel: (212) 766-1443
Email: Ronaldphartesq@gmail.com

/s/ Abadir J. Barre

Abadir J. Barre, Esq.
Barre Law, LLC
30 Broad St., 14th Floor
New York, NY 10004
Tel: (646) 244-8784
Email: abaidr@barrelaw.com
*Pro Hac Vice Forthcoming*

/s/Tito A. Saavedra

Tito A. Saavedra Esq.*

Barre Law, LLC

30 Broad Street,
14th Floor

New York, NY 10004
Email: tsaavedra@barrelaw.com
Attorney for Petitioner
\* *Pro Hac Vice Forthcoming*

## VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioner because I am the attorney for Petitioner. I and my co-counsel have discussed with the Petitioner the events described in this Petition. Based on those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: September 30, 2025,                                    Respectfully submitted,

/s/ Ronald Paul Hart

Ronald Paul Hart Esq.*
Local Counsel for Abadir J. Barre
*Pro Hac Vice Forthcoming*

/s/Abadir J. Barre

Abadir J. Barre Esq.*
Attorney for Petitioner
*Pro Hac Vice Forthcoming*

/s/Tito Saavedra

Tito Saavedra Esq.*
Attorney for Petitioner
*Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that on this date, I filed this Petition for Writ of Habeas Corpus and all attachments using the CM/ECF system. My co-counsel furthermore will mail a copy by USPS Certified Priority Mail with Return Receipts to each named Defendant

Dated: September 30, 2025                    Respectfully submitted,


/s/Abadir J. Barre

Abadir J. Barre Esq.*
Attorney for Petitioner
* *Pro Hac Vice Forthcoming*